Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Robert W. Gettleman | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| CASE NUMBER | 99 C 5315 | DATE | January 28, 2004 |
| CASE TITLE | DALE GIBSON v SHERIFF KENNETH RAMSEY | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due ______.

(3) ☐ Answer brief to motion due______. Reply to answer brief due______.

(4) ☐ Hearing

(5) ☐ Status hearing

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on ______ set for ______ at ______.

(7) ☐ Trial[set for/re-set for] on ______ at ______.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to ______ at ______.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to] ☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry]

Memorandum opinion and order entered. Accordingly, defendants' motion for summary judgment is granted in its entirety. Any pending motions are denied as moot.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | Document Number |
|---|---|---|---|---|
| | No notices required, advised in open court. | | number of notices | |
| | No notices required. | | | |
| X | Notices mailed by judge's staff. | | JAN 29 2004 | |
| | Notified counsel by telephone. | | date docketed | |
| | Docketing to mail notices. | | UMJ | 59 |
| | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | U.S. DISTRICT COURT CLERK | | |
| GDS | courtroom deputy's initials | 04 JAN 28 PM 12:23 | date mailed notice | |
| | | FILED-ED<br>Date/time received in central Clerk's Office | mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| DALE GIBSON, Plaintiff, | ) | No. 99 C 5315 |
| v. | ) | Judge Robert W. Gettleman |
| SHERIFF KENNETH RAMSEY, and KANE COUNTY, ILLINOIS, Defendants. | ) | |

DOCKETED JAN 29 2004

**MEMORANDUM OPINION AND ORDER**

Plaintiff, Dale Gibson currently an inmate at Pinckneyville Correctional Center, but formerly a pretrial detainee at the Kane County Jail, has brought this pro se civil rights action pursuant to 42 U.S.C.§1983. He claims in his first amended complaint[1], that the defendants, Sheriff of Kane County and Kane County, violated his constitutional rights by providing him with inadequate medical care, poor conditions at the jail, and lack of a proper law library. This matter is before the court for consideration of the defendants' motion for summary judgment.

**Standard of Law**

Summary judgment will be granted when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). *O'Connor v. DePaul Univ.*, 123 F.3d 665, 669 (7th Cir. 1997). In weighing a motion for summary judgment, the court must take the facts in the light most favorable to the party opposing the motion and draw all reasonable inferences in that party's favor. *Bahl v. Royal Indemnity Co.*, 115 F.3d 1283,1289 (7th Cir. 1997); *Condo v. Sysco Corp.*,

---

[1] The case proceeds on the first amended complaint, against only the Sheriff of Kane County and the County itself. All other parties have been dismissed.

59

1 F.3d 599, 601 (7th Cir. 1993). The party opposing the motion must present evidence of a triable issue of material fact. *See Vance v. Peters,* 97 F.3d 987, 990 (7th Cir. 1996). The non-moving party is required to go beyond the pleadings and designate specific facts showing a genuine issue for trial. *Bank-Leumi Le-Israel, B.M. v. Lee,* 928 F.2d 232, 236 (7th Cir. 1991). A fact is material when it would determine the outcome under the governing law *Whetstine v. Gate Rubber Co.,* 895 F.2d 388, 392 (7th Cir. 1990). A material fact is genuinely in dispute when "the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986).

**Background**

The plaintiff alleges in his first amended complaint that he came to jail with a preexisting back injury, that the injury was known to defendants and that it was exacerbated by sleeping on a mattress on the floor. Further, he complains that it is unconstitutional to have to pay the $5 medical fee charged by the jail. In addition to a medical claim, plaintiff alleges that the conditions at the jail -- excessive noise, poor ventilation and foul smelling water– also injured him. His final claim is that the inadequate law library facilities prohibited him from raising certain legal claims in his criminal defense.

Defendants deny these claims and state in their Local Rule ("LR") 56.1 Statement of Uncontested Material Facts: Plaintiff was housed in the Kane County Jail from June 6 through October 14, 1998; he was successfully treated for his back pain by taking Tylenol; he never filed a grievance related to this medical problem; he never told staff at the jail that he had a back problem; and his jail physical exam showed that he was normal in his neck, extremities and

spine. Additionally, no medical care was refused to plaintiff for lack of funds because he had, on average, $200 in his inmate trust account while at the jail.

Defendants further state that plaintiff never sought medical care for anything related to any conditions at the jail, he drank water from his cell(his complaint addressed only the day room water, not his cell water), and that the Illinois Department of Environmental Protection told him that the water was fine except for a "residual radium" problem and that it was the same water used by the city of Geneva. Similarly, plaintiff neither sought nor received medical care for any problems related to the noise in the jail.

Finally, regarding the law library claim, defendants state that plaintiff blamed his public defender for the fact that he pled guilty, in spite of the fact that he admitted in the criminal case that the guilty plea was voluntary. He wanted better law library facilities in order to communicate with his lawyer.

In plaintiff's responses to defendants' LR 56.1 Statement of Facts, regarding pre-existing back pain, he admits that he did not have any pre-existing pain, but that one morning he woke up with back pain. Further, he stated that he refused to sign the voucher for medical assistance payment because he thought the cost was too high. He further states that he never admitted any injuries because he was never asked about them. At the time he was in the jail "the Plaintiff had no re-accuring[sic] back injury or any injuries at all at that time..." (Pl. Res. p.3). He further states that he did not seek medical care for any harm caused by the conditions of his confinement.

Additionally, plaintiff states that he woke up in June of 1998 with acute back pain and he was denied medical care. Further, he states that it was in July, 1998 that the nurse told him about the co-payment due. He refused to sign the voucher form to make the co-payment; instead he

decided to take Tylenol, which he obtained from the guards or other inmates at night, and this was sufficient to relieve his pain. He felt that it was necessary to buy hygiene products, not medicare care, with his trust fund money. Finally, he states that if he would have been allowed to see the doctor, he would have told the doctor about his acute back pain.

Regarding his criminal case, he claims that his library claim is valid because, although he had counsel, he nevertheless filed pro se motions. He claims that he needed a better law library so that he could communicate better with his attorney.

**Parties' Statements of Material Facts**

The defendants' LR 56.1 Statement of Material Facts is supported primarily by plaintiff's own deposition. Specifically, plaintiff's complaint about the day room air quality was that it did not contain enough moisture and it was cold. He had no complaints about the air in his cell. The water available in the day room smelled bad and he refused to drink it. He therefore brought water from his cell in bottles to the day room. He suffered no injury from the noise. The law library was not "accurate enough for me to correspond with my attorney." Regarding money in his trust account, he admits that his family sent money, although he did not have a job in the institution, and further "hygiene were [sic] more important to me at that time...." He had about $200 for the entire time he was at the jail. He further admits that the jail had a policy not to deny medical services to indigents. Further, for non-emergency care, inmates were required to sign a request slip seeking medical attention. The reason he did not see a doctor for his back pain was that he refused to sign the slip regarding his obligation of co- payment.

The back injury plaintiff describes was originally caused by a bicycle accident in 1994, for which at that time he was given pain killer and muscle relaxer for 30 days following the

accident. He did not have any back pain when he entered the institution and filled out the intake form to that effect. When he woke up with back pain it was due in part to sleeping without a pillow, and included neck pain. He refused to sign the voucher form to pay for the medical visit, stating "Look, you guys are trying to kill us with our commissary money." He did not file any additional request slips. At that time, his back pain was "not that bad" and he got Tylenol at night. This was sufficient to deal with his back pain. He never sought medical care for nosebleeds or from foul smelling water. He has no problems with the doctors or the nurses, but one nurse has a problem with him because he refused to sign the voucher form.

Nowhere does plaintiff submit evidence about the role of the sheriff or the role of the county in denying him medical care, or in exhibiting deliberate indifference toward his health in the other conditions complained of, poor ventilation or humidity in the day room air, noise and water problems. Nor did he provide evidence that he suffered any injury from any of these conditions.

Plaintiff's LR 56.1 Statement and Supporting Documents.

Plaintiff claims that there is a dispute regarding the material facts. Medical claim: He states in his response, that he suffered acute pain on the morning that he asked the guard to see the doctor, and was told he had to fill out a request slip. Plaintiff states that the guard could have let him go across the hall to see the nurse or doctor. He states that he was refused medical treatment by staff. He states that the co-payment policy ( under which he had to pay $11 not $5) was excessive and unconstitutional. He now further claims that although he may have had a total of $200 in his trust account, it came in little by little and that when he sought medical care he was indeed indigent.

The medical records he submits are from 1999, after the time involved in this case, and state that his spine is normal. These medical records are from prisons in Illinois and Texas, not the Kane County Jail.

Plaintiff states in conclusory fashion that the cells were crowded, there was a lack of recreation, he could not drink for long periods due to the foul smelling water, he was cold in the day room, and he got nosebleeds while in the day room.

These conclusory unsupported statements regarding the conditions of his confinement are contradicted in large part by his sworn statements in plaintiff's deposition.

Law library: Plaintiff needed materials in order to communicate with his attorney and prepare his legal defense. He filed pro se motions in his criminal case because his attorney was not doing so. His plea of guilty was not coerced, but he "disagreed with the allegations on his sentence." He reiterates that the sheriff is being sued in his official capacity. He also claims that his signature on some of the documents submitted by defendants are forged. He provides nothing other than his own opinion regarding this point, and never raised the issue in his amended complaint. He now asks this court, in Exhibit C, for a handwriting analysis. He submits a copy of an order from his criminal case, in which he highlights that the court denied his pro se motion to dismiss. He also submitted additional pro se motions that he filed in that case. In particular he submits a motion to reconsider sentence, and the order denying same. In the order the judge reiterates that plaintiff had voluntarily entered a negotiated guilty plea after being fully admonished by the court.

To support his arguments, plaintiff submits identical affidavits from a number of inmates, which affidavits contradict statements he has made in his own deposition, or state claims not

included in his amended complaint. This he cannot do. *Beckel v. Wal-Mart Associates, Inc.*, 301 F. 3d 621, 623-24 (7th Cir. 2002); *Kalis v. Colgate-Palmolive Co.*, 231 F. 3d 1049, 1055 (7th Cir. 2000). Further, plaintiff's response to the motion for summary judgment cannot amend his complaint. *Grayson v. O'Neill*, 308 F. 3d 808, 817 (7th Cir. 2002)(citing *Shanahan v. City of Chicago*, 82 F.3d 776, 781 (7th Cir.1996)); *Insolia v. Philip Morris Inc.*, 216 F. 3d 596, 606 (7th Cir. 2000). For example, in the identical affidavits, inmates state that they too were injured by the "inadequate ventilation, resulting in sinus pains and excessive nose bleeds..., drying and cracking of the skin from showering as the water is extremely hard.... excessive noise that staff is unable to control causing mental anguish in the loss of the ability to sleep, hear, read or even think.... loss of gym for proper exercise... diet falling short of a standard 2000 calorie diet...all this and more is caused from the over crowding and the jail rules and regulations." Such allegations are for the most part outside the scope of the amended complaint. Further, none of the affidavits is notarized. The court considers only those claims raised in the amended complaint.

Analysis

1) The Defendants

Plaintiff has limited his suit against the Sheriff to an official capacity claim only. *See* Docket entry #20, March 22, 2001, "the complaint is amended on its face to allege liability in Sheriff Ramsey's official capacity;" and Res. 5. Official capacity suit against the sheriff is a suit against the sheriff's department. *Franklin v. Zaruba*, 150 F. 3d 682, 686 (7th Cir. 1998). Official-capacity suits "generally represent only another way of pleading an action against an entity of which an officer is an agent." *Monell v. New York City Dept. of Social Services*, 436

U.S. 658, 690, n.55 (1978). Plaintiff must establish that he suffered a constitutional deprivation due to a custom or policy of the county or the sheriff's department. *Baskin v. City of Des Plaines*, 138 F. 3d 701, 704 (7th Cir. 1998).

Additionally, an official capacity claim cannot be for punitive damages. "When an official is sued in his official capacity, there is a general presumption that no punitive damages are available in a § 1983 action. *Holly v. City of Naperville*, 571 F.Supp. 668, 673 (N.D.Ill.1983)." *Collier v. City of Freeport*, 1988 WL 124716, *1 (N.D.Ill.). *See Opal v. Cencom E* 911, 1994 WL 97723, at *6 (N.D.Ill. March 22, 1994) ("Municipalities are immune from liability for punitive damages under section 1983."); *Ferguson v. Joliet Mass Transit Dist.*, 526 F.Supp. 222, 223 (N.D.Ill.1981) (same).

If plaintiff were to have included a personal capacity claim for damages, he would have to show the defendant's personal involvement or participation, or direct responsibility for the conditions of which he complains. *Rascon v. Hardiman*, 803 F.2d 269, 273( 7th Cir. 1986); *Wolf-Lillie v. Sonquist*, 699 F.2d 864, 869 (7th Cir.1983). The doctrine of respondeat superior, under which a supervisor may be held liable for an employee's actions, has no application to § 1983 actions. *Adams v. Pate*, 445 F.2d 105, 107 (7th Cir.1971). Therefore, claims plaintiff asserts against the nurse or the correctional staff, for individual incidents he describes in his claim for denial of medical care, are not applicable against the sheriff in his official capacity.

<u>Kane County as defendant</u>

Kane County was added as a defendant on February 9, 2001. Plaintiff's last day in the Kane County Jail was October 14,1998. There is no relation back to date of filing of the first complaint, for a party who was unnamed in the original complaint. *Eison v. McCoy*, 146 F.3d

468, 472 (7th Cir.1998); *Delgado-Brunet v. Clark,* 93 F. 3d 339 (7th Cir. 1996); *See Worthington v. Wilson* 8 F. 3d 1253, 1256-57 (7th Cir. 1993). *See also Wood v. Worachek,* 618 F.2d 1225, 1230(7th Cir. 1980). "Rule 15(c) permits an amendment to relate back only where there has been an error made concerning the identity of the proper party and where that party is chargeable with knowledge of the mistake, but it does not permit relation back where, as here, there is a lack of knowledge of the proper party." *Wood v. Worachek,* 618 F.2d at 1229- 1230.

Pursuant to 42 U.S.C.§1988, federal courts must apply a state's personal injury statute of limitations to all §1983 claims. *See Wilson v. Garcia*, 471 U.S. 261(1985). The applicable statute in this case is 735 ILCS 5/13-202(1994), which provides that actions for damages shall be commenced within two years from accrual of the action. *See Booker v. Ward*, 94 F. 3d 1052, 1056 (7th Cir. 1996), citing *Farrell v. McDonough*, 966 F. 2d 279, 282 (7th Cir. 1992). The statute of limitations is not tolled even though the plaintiff may not know the wrong done to him is legally actionable. *Tate v. Beverly Chrysler Plymouth*, 182 Ill. App. 3d 830, 837, 538 N.E.2d 663, 667 (Ill. App. 1st Dist. 1989). Likewise, a plaintiff's incarceration itself, including the customary restraints it places on access to lawyers and legal materials, is insufficient to excuse a delay in filing suit. *See Wilson v. Giesen*, 956 F. 2d 738, 742 (7th Cir. 1992). Because plaintiff's last day in the jail was over two years before he added the County as a defendant, therefore, defendants are correct that the statute of limitations bars any claims against the County of Kane.

2) Conditions of confinement:

Overcrowding

The rights of pretrial detainees are derived from the Fourteenth Amendment's Due Process Clause. The standard for determining punishment is similar whether considered in the

context of the Due Process Clause or the Eighth Amendment. *Salazar v. City of Chicago*, 940 F.2d 233, 239-240 (7th Cir. 1991). Punishment in the constitutional sense requires allegations of extreme deprivations over an extended period of time. *Hudson v. McMillian*, 503 U.S. 1, 9 (1992), *Bell v. Wolfish*, 441 U.S.520, 542 (1979). Only those deprivations denying the minimal civilized measure of life's necessities are sufficiently grave to form the basis of an Eighth Amendment violation. *Wilson v. Seiter*, 501 U.S. 294, 298 (1991). Overcrowded conditions, including sleeping on a mattress on the floor, while regrettable, nevertheless do not constitute punishment in the constitutional sense. Being assigned to sleep on a mattress on the floor is not itself enough to give rise to a claim of punishment. *Hines v. Sheahan*, 845 F.Supp.1265, 1269 (N.D.Ill.1994); *Powell v. Cook County Jail*, 814 F.Supp. 757, 759 (N.D.Ill 1993). Plaintiff has failed to offer any evidence to show that the jail officials acted with deliberate indifference to plaintiff's basic human needs. *Tesch v. County of Green Lake*, 157 F. 3d 465 (7th Cir. 1998). Absent more, the fact that an inmate's mattress is on the floor rather than elevated is of no constitutional significance. *See Powell v. Cook County Jail*, 814 F. Supp. at 759(N.D. Il. 1993), cited with approval in *Tesch v. County of Green Lake*, 157 F. 3d at 476.

Noise

Regarding excessive noise, the risk of injury due to the noise conditions must be "so grave that it violates contemporary standards of decency to expose anyone unwillingly to such a risk." *Helling v. McKinney*, 509 U.S. 25, 35 (1993). Plaintiff's speculative and unsupported assertions fall far below this standard, and are insufficient to withstand defendants' motion for summary judgment. *See Lunsford v. Bennett*, 17 F.3d 1574, 1580 (7th Cir.1994). (affirming summary judgment for prison officials who allegedly subjected prisoners to loud noises over an

intercom during a 24-hour period; "[t]he record contains no evidence that the noise levels posed a serious risk of injury to the plaintiffs. Subjecting a prisoner to a few hours of periodic loud noises that merely annoy, rather than injure the prisoner does not demonstrate a disregard for the prisoner's welfare"); *Murphy v. Dowd*, 975 F.2d 435, 437 (8th Cir.1992) (*per curiam* ) (affirming judgment for prison officials, finding excessive noise claim was meritless); *Givens v. Jones*, 900 F.2d 1229, 1234 (8th Cir.1990) (affirming summary judgment for prison officials in suit alleging excessive noise caused by remodeling in prison; court finds noise is "a fact of life" and that the claim "on its face appears almost specious"; inmate failed to claim the noise was result of malicious intent or even reckless disregard for his well-being); *Peterkin v. Jeffes*, 855 F.2d 1021, 1027 (3d Cir.1988) ("the noise in the cells, while it may be irritating to some prisoners, cannot fairly be said to inflict cruel and unusual punishment"); *Spivey v. Doria*, No. 91 C 4169 (N.D.Ill. March 24, 1994), 1994 WL 97756 at *11 (finding no constitutional violation where inmate only alleges that noise level caused him to lose sleep and made him irritable; "Federal courts are not the forums to determine proper lighting and noise levels in jails").

<u>Water</u>

The Seventh Circuit Court of Appeals in *Carroll v. DeTella*, 255 F.3d 470 (7th Cir. 2001), held that the alleged radium contamination in the water at the Stateville Correctional Center was not cruel and unusual punishment. The court observed: "The Eighth Amendment does not require prisons to provide prisoners with more salubrious air, healthier food, or cleaner water than are enjoyed by substantial numbers of free Americans." *Id.* at 472 (citations omitted). Therefore, plaintiff has failed to show that the smell of the water is a constitutional issue.

Plaintiff has failed to state how these conditions resulted from a policy or custom at the jail. If the conditions themselves are not unconstitutional, then the policy challenged cannot be either. *Tesch v. County of Green Lake,* 157 F. 3d 465, 477(7th Cir. 1998) (citations omitted). The court concludes that the facts asserted do not rise to the level of Fourteenth Amendment violations under the standards of *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) and *Wilson v. Seiter*, 501 U.S. 294 (1991).

Because plaintiff failed to state an underlying claim for unconstitutional conditions at the jail, therefore his suit against the sheriff for an unconstitutional policy regarding such conditions must fail.

Ventilation

Inadequate ventilation, usually in combination with other factors, may give rise to an Eighth Amendment claim. *Ramos v. Lamm,* 639 F. 2d 559, 569 (10th Cir. 1980). However, the problem must be extreme. *Dixon v. Godinez,* 114 F.3d 640, 645 (7th Cir. 1997). Plaintiff failed to support this claim with any evidence. He failed to submit evidence that he suffered from nosebleeds as a result of lack of humidity in the day room air system. Like the plaintiff in *Dixon,* plaintiff here "offered only conclusory allegations, without backing from medical or scientific sources."*Id.* Conditions such as poor ventilation, or dry air, do not fall below "the minimal civilized measure of life's necessities," absent medical or scientific proof that such conditions exposed a prisoner to diseases or respiratory problems which he would not otherwise have suffered. *Dixon v. Godinez*, 114 F.3d at 645 (7th Cir.1997) (quoting *Farmer v. Brennan,* 511 U.S. at 833-34).

No injury:

The Prison Litigation Reform Act ("Act") states that "(n)o Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility for mental or emotional injury suffered while in custody without a prior showing of physical injury." 42 U.S.C. § 1997e(e). Plaintiff has failed to present any evidence showing actual injury from any of the conditions he claims existed at the jail. For this reason, he has failed to meet injury requirement under the Act.

Plaintiff failed to submit evidence admissible at trial for these issues. See Fed.R.Civ.P. 56(e) (affidavits shall be made on personal knowledge and shall set forth facts that would be admissible in evidence); *Winskunas v. Birnbaum*, 23 F.3d 1264, 1267-68 (7th Cir.1994) (to ward off summary judgment, plaintiff must present materials containing factual content that is of evidentiary quality and that demonstrates the existence of a genuine issue of material fact).

3) Medical care claim

Plaintiff admitted in his deposition that he did not have a pre-existing back problem, nor did he say anything to anyone at the jail about any medical needs, upon entry into the jail. Instead, he states that he woke up with back pain one day in June, 1998, and further , that he was able to take Tylenol for the pain and that this helped him.

a) Medical care standard

The Eighth Amendment protects prisoners from deliberate indifference to a serious injury or medical need. *See Zentmyer v. Kendall County*, 220 F.3d 805, 810 (7th Cir.2000) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104(1976)). This protection is extended to pretrial detainees under the Due Process Clause of the Fourteenth Amendment. *See id.* To prevail, the detainee

must satisfy an objective and a subjective element, namely that: (1) an objectively serious injury or medical need was deprived; and (2) the official knew that the risk of injury was substantial but nevertheless failed to take reasonable measures to prevent it. *See Henderson v. Sheahan*, 196 F.3d 839, 845 (7th Cir.1999). Under the first prong, an objectively serious injury or medical need is " 'one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.' " *Zentmyer*, 220 F.3d at 810 (*quoting Gutierrez v. Peters*, 111 F.3d 1364, 1373 (7th Cir.1997)). Waking up with back pain, taking Tylenol to relieve the pain, does not state a serious medical condition.

Under the second prong, it must be shown "that the official was aware of the risk and consciously disregarded it nonetheless." *Mathis v. Fairman*, 120 F.3d 88, 91 (7th Cir.1997) *(citing Farmer v. Brennan*, 511 U.S. 825, 840-42 (1994)). Neither negligence nor even gross negligence is a sufficient basis for liability; rather, liability attaches only if the conduct is intentional or criminally reckless. *See Salazar v. City of Chicago*, 940 F.2d 233, 238 (7th Cir.1991); *Chapman v. Keltner*, 241 F.3d 842, 845- 46 (7th Cir. 2001). Plaintiff has failed to state a claim for failure to provide him with medical care for a serious medical need, and he has further failed to show any deliberate indifference on the part of the defendant to his health care needs. Having failed to show either prong of this test for unconstitutional medical care, therefore, this claim is without merit.

b) Medical Co-payment claim

Plaintiff's medical care was not conditioned on his ability to pay for it. *See Reynolds v. Wagner*, 128 F.3d 166, 174 (3d Cir.1997) (prisoner co-payment plan does not violate the Eighth Amendment). *See also Hudgins v. DeBruyn*, 922 F.Supp. 144, 150-52 (S.D. Ind.1996) (same);

*Martin v. DeBruyn*, 880 F.Supp. 610, 615 (N.D.Ind.1995), aff'd, 116 F.3d 1482 (7 th Cir.1997) (Eighth Amendment guarantees only that inmates receive necessary medical care; it does not guarantee free medical care). Prisoners may be charged for medical care so long as necessary medical care is not denied to those unable to pay for it. *See Reynolds v. Wagner*, 128 F.3d 166, 174 (3d Cir.1997)(prisoner co-payment plan does not violate Eighth Amendment); *Hudgins v. DeBruyn*, 922 F.Supp. 144, 150-52 (S.D. Ind.1996)(same). *Spates v. Schultz*, 2001 WL 789413, *2 (N.D.Ill.). "Co-pay" policies under which inmates must bear part of the cost of their treatment are constitutionally permissible if they do not interfere with timely and effective treatment of serious medical needs. *Shapley v. Nevada Bd. of State Prison Comm'rs,* 766 F.2d 404 (9th Cir.1985); *Johnson v. Dept. of Public Safety and Correctional Services,* 885 F.Supp. 817 (D. Md.1995).

The Kane County Jail co-pay policy meets the constitutional tests set forth in these cases and in *Martin v. DeBruyn* and *Hudgins v. DeBruyn*, because detainees are provided medical attention even if they do not currently have money in their trust account to make a co-payment. Plaintiff cites no specific instances where he was denied medical attention as a result of the policy. *Jones-Bey v. Cohn,* 115 F.Supp.2d 936, 940 (N.D. Ind. 2000). Instead, in his deposition, he states that he refused to pay from his trust fund at the jail, because he preferred to use that money to pay for hygiene articles. He does not deny that he had sufficient funds in his account to cover the required payments. Therefore, plaintiff's claim that the medical co-payment was unconstitutional also fails.

<u>Library claim</u>

Plaintiff admits that he had counsel in his criminal case. *Lewis v. Casey*, 518 U.S. 343 (1996), held that to establish a violation an inmate must demonstrate is that the alleged shortcomings in the prison library or legal assistance program have hindered, or are presently hindering, his efforts to pursue a nonfrivolous legal claim. "Prisoners have a constitutional right to 'meaningful' access to the courts. *Bounds v. Smith*, 430 U.S. 817, 828 (1977); *Shango v. Jurich*, 965 F.2d 289, 291 (7th Cir.1992); *Gometz v. Henman*, 807 F.2d 113, 116 (7th Cir.1986). Prisoners must receive 'that quantum of access to prison libraries--not total or unlimited access--which will enable them to research the law and determine what facts may be necessary to state a cause of action.' *Hossman v. Spradlin*, 812 F.2d 1019, 1021 (7th Cir.1987); *see also Campbell v. Miller*, 787 F.2d 217, 226 (7th Cir.1986)." *Gentry v. Duckworth*, 65 F.3d 555, 558 (7th Cir. 1995). Further, if detainee has counsel, then he is not denied access to the court. *Martin v. Tyson*, 845 F.2d 1451, 1456 (7th Cir.1988) (indicating that represented inmate was not denied meaningful access to the courts were there was no prison law library because the right to meaningful access is generally satisfied if the inmate is represented by counsel and he cannot "point to any claim that he was unable to pursue."). *Fowler v. Boykin*, 2003 WL 21209839, *3 (N.D.Ill.). Because plaintiff had counsel in his criminal case at the time of his denial of access to the court claim, this claim must fail.

For all of the above reasons, plaintiff has failed to show that the sheriff acting in his official capacity established any policy or custom that was unconstitutional.

## CONCLUSION

For the foregoing reasons, defendants' motion to summary judgment is granted in its entirety. Any pending motions are denied as moot.

**ENTER: January 28, 2004**

**Robert W. Gettleman**
**United States District Judge**